IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERIC DAVID LOFLAND, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-06-0672 |
| | § | |
| NATHANIAL QUARTERMAN, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Pending in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 11). Having considered Respondent's Motion, Petitioner's Response (Document No. 15), the claims raised by Petitioner in his Federal Application for Writ of Habeas Corpus, the state court records, and the applicable law, the Court ORDERS,[1] for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 11) is GRANTED, Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and this § 2254 proceeding is DISMISSED with prejudice.

## I.    Introduction and Procedural History

Eric David Lofland ("Lofland") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of his conviction for capital murder. Lofland

---

[1] On August 18, 2006, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 17.

was charged by Indictment with that offense on October 26, 2001, in the 184th District Court of Harris County, Texas, Cause No. 883805. Lofland pled not guilty and was tried by a jury, which found him guilty of the capital murder of Daniel Garza, as charged in the Indictment. Because the State had not sought the death penalty, Lofland was, pursuant to state law, automatically sentenced to life imprisonment. A judgment of conviction was entered by the trial court on October 11, 2002.

Lofland appealed. On October 30, 2003, Texas' Fourteenth Court of Appeals affirmed Lofland's conviction in an unpublished opinion. *Lofland v. State*, 14-02-010-CR. Lofland's petition for discretionary review was then refused by the Texas Court of Criminal Appeals on March 31, 2004. Thereafter, on July 1, 2004, Lofland filed a state application for writ of habeas corpus. On August 17, 2005, the Texas Court of Criminal Appeals denied Lofland's application without written order on the findings of the state trial court without a hearing. This § 2254 proceeding, filed by Lofland's counsel on March 1, 2006, followed.

## II.    **Factual Background**

Lofland was charged first by Complaint and then by Indictment with the capital murder of Daniel Garza. The evidence in the record shows that Lofland, nineteen years old at the time of the offense, was attending a party at a hotel room on July 22, 2001. Tate Robinson later arrived at the party, appearing intoxicated. Robinson loudly announced to the room his idea to "jack" a drug dealer he knew. Robinson placed a call to Salvador Ruelas, who agreed to meet Robinson in order to sell him drugs. Robinson left the hotel room with several others, including Lofland. A female drove Robinson to a Kroger parking lot where he was to meet Ruelas. Alvin Johnson drove Lofland's vehicle, with Lofland riding in the passenger seat, to the same parking lot. Another

vehicle, driven by Jonathan Downing and with Joey Jebbia as the passenger, went to the same parking lot. Robinson, Jebbia and Lofland each had firearms, Lofland's being a semi-automatic rifle which he carried in his lap.

At the parking lot, Ruelas arrived in a vehicle driven by Daniel Garza; Mark Lopez was a passenger in the back seat of the car. Garza parked the vehicle next to Robinson's and Robinson, brandishing a firearm, entered the vehicle containing Garza, Ruelas and Lopez. He demanded money. Both Ruelas and Garza ordered Robinson out of the car, and Robinson ultimately complied. As the vehicle Garza was driving was pulling away from Robinson's vehicle, Lofland, from some distance away, fired ten shots at the back of the vehicle Garza was driving. Six of the shots struck the car, with one striking Garza. Garza, pursued by Lofland and Johnson, crashed the vehicle into a ditch. Ruelas went for help, but Garza died from his wounds at the scene. Lofland was identified by Jonathan Downing and Alvin Johnson as the person who fired the shot that killed Garza. That identification testimony was corroborated by other witness testimony and other evidence, including shell casings, collected from the scene.

Lofland was charged with the capital murder of Garza based on the murder having occurred during the course of a robbery.

### III.   Claims

In his § 2254 application, Lofland sets forth the following three claims:

1.      that "the jury instruction on transferred intent that authorized conviction for capital murder on facts that constituted only murder denied petitioner due process of law and a fair trial";

2.      that "trial counsel was ineffective in failing to object to the fundamentally defective jury instruction on transferred intent"; and

3.      that "appellate counsel was ineffective in failing to raise the issue that the jury instruction on transferred intent was fundamentally defective."

§ 2254 Application (Document No. 1) at 2.   Respondent argues in the Motion for Summary Judgment that each of these claims was raised by Lofland in his state application for writ of habeas corpus, and each was properly rejected by the Texas Court of Criminal Appeals on the merits. Lofland, in contrast, contends that the Texas Court of Criminal Appeals improperly rejected claim one on procedural grounds, and did not reach the merits of claim two.


**IV.    Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited.   28 U.S.C. § 2254(d) provides:

(d)   An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the

4

relevant state-court decision.' " *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000))..

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams*, 529 U.S. at 405-406). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000)." *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd*, 124 S.Ct. 1652 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 534 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative. In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

**IV.    Discussion**

Lofland did not raise any of the three claims he raises herein in his direct appeal. Rather, each of the three claims was raised by Lofland for the first time in his state application for writ of

habeas corpus.  In addition, each claim was raised by Lofland in his state application for writ of

habeas corpus in essentially the same manner and with essentially the same argument and case law

as that cited herein.

**A.    Erroneous Jury Instruction Claim (Claim One)**

In his first claim, Lofland contends that the jury instruction on transferred intent was faulty

and erroneous because it did not make it clear that a conviction for capital murder required proof and

a finding of proof beyond a reasonable doubt that Lofland intentionally committed the murder of

Garza during the course of a robbery or attempted robbery.  According to Lofland in his § 2254

application:

> The jury was instructed that it had to find that the murder was committed in the
> course of a robbery or attempted robbery in order to convict him of capital murder.
> However, the transferred intent instruction authorized conviction for capital murder
> without requiring the jury to find that the death was caused during a robbery. . . . The
> jury was instructed that it had to find that petitioner specifically intended to cause the
> death of Garza in order to convict him of capital murder.  However, the transferred
> intent instruction authorized conviction for capital murder if applicant intentionally
> or knowingly shot a firearm at one of the occupants of the car, "intending or knowing
> that serious bodily injury or death would occur[.]"

§ 2254 Application (Document No. 1) at 9, 11-12 (internal record references omitted).  The Texas

Court of Criminal Appeals rejected Lofland's erroneous jury instruction claim on the basis of a state

law procedural bar:

> Since [Lofland] failed to challenge the trial court's transferred intent instruction on
> direct appeal and to show that this purportedly flawed instruction denied [Lofland]
> due process, then [Lofland] cannot presently challenge the trial court's transferred
> intent instruction in the instant habeas proceeding. *Ex parte Coleman*, 599 S.W.2d
> 305, 306 (Tex. Crim. App. 1978).

*Ex parte Lofland*, Application No. WR-60,823-01 at 152.  Respondent argues that the state law procedural bar also acts as a procedural bar to this Court's review of Lofland's erroneous jury charge claim.  The Court agrees.

Federal courts are precluded from considering claims which were rejected by the last state court to have considered them on the basis of a state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989).  In order for a state court's rejection of a habeas claim to act as a procedural bar to review in a federal habeas proceeding, the state court must, in a plain statement, determine that its rejection of the claim rests on adequate and independent state procedural grounds. *Harris*, 489 U.S. at 261; *Michigan v. Long*, 463 U.S. 1032, 1042 (1983). Once a state court has relied on a procedural default for rejecting a habeas claim, a federal court in a federal habeas proceeding cannot review such a claim unless the petitioner shows cause and prejudice associated with the default or shows that absent a review of the claim by a federal court a fundamental miscarriage of justice will result. *Coleman*, 501 U.S. at 750.  A fundamental miscarriage of justice occurs when a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Sawyer v. Whitley*, 945 F.2d 812, 816 (5th Cir.) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)), *cert. granted*, 502 U.S. 965 (1991), *and aff'd*, 505 U.S. 333 (1992).

Here, Lofland maintains that his counsel's ineffectiveness at trial and on appeal suffice as "cause" for his failure to timely and properly raise his erroneous jury instruction claim with the trial court and on appeal.  While an attorney's deficient performance may, in some instances, constitute cause for a state procedural default, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), Lofland's claims of ineffectiveness are, for the reasons set forth below, not meritorious.  Moreover, assuming

8

Lofland's allegations of ineffectiveness could suffice as cause in this case, Lofland has not established the requisite prejudice – that is, "but for the error he might not have been convicted," *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996), or that he is actually innocent. The evidence in the record shows that Lofland was the one who fired the shots that killed Garza. The evidence also shows that Lofland voluntarily accompanied Robinson to the Kroger parking lot armed with a semi-automatic rifle, knowing that he was to be involved in a robbery.

Because Lofland has not established the requisite cause and prejudice to overcome the state law procedural default, and because there has been no showing that Lofland is actually innocent of the capital murder offense of which he was found guilty, Lofland's erroneous jury charge claim, which was found by the Texas Court of Criminal Appeals to be procedurally barred from review, is likewise procedurally barred from review in this § 2254 proceeding.

In addition, even if the claim were not procedurally barred, no relief is available on the merits of that claim under § 2254. To be entitled to federal habeas corpus relief on an improper jury instruction claim, a habeas petitioner must establish that the erroneous instruction was so prejudicial that it negatively affected the outcome of the trial. *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir.), *cert. denied*, 464 U.S. 1002 (1983). An improper jury instruction violates a defendant's constitutional rights if the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S.

9

145, 154 (1977).   In a collateral proceeding, such as this, the question is "not merely whether 'the instruction is undesirable, erroneous, or even universally condemned,'" but "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.*[2]   Given this standard, it is rare that an improper jury instruction will warrant the reversal of a criminal conviction; it is even more rare that an improper jury instruction will warrant the reversal of a criminal conviction if an objection to the allegedly improper instruction has not been made in the trial court.  *Id.*

An erroneous jury instruction claim only warrants habeas corpus relief if the erroneous jury instruction had a substantial and injurious effect on the jury's verdict.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (habeas relief is available for trial errors of constitutional magnitude only if the error "had substantial and injurious effect or influence in determining the jury's verdict").  If the allegedly erroneous jury instruction had no such effect, the error is considered harmless.  *See Mitchell v. Esparza*, 540 U.S. 12, 16-19 (2003); *Garcia v. Quarterman*, 454 F.3d 441, 446-449 (5th Cir. 2006); *Baltazar v. Cockrell*, 34 Fed. Appx. 151 (5th Cir.), *cert. denied*, 537 U.S. 873 (2002).

The jury was instructed on the theory of transferred intent as follows:

> A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different person or property was injured, harmed, or otherwise affected.
> Now, if you believe from the evidence beyond a reasonable doubt that the defendant, Eric David Lofland, in Harris County, Texas, on or about the 22nd day of July, 2001, did then and there unlawfully and intentionally or knowingly shoot a

---

[2] "[I]f a jury instruction were to permit conviction under circumstances that lightened this heavy constitutional burden [to prove all elements of the criminal offense beyond a reasonable doubt], it is possible that, if the error were sufficiently central to the entire trial, the conviction would violate the Constitution." *Thacker v. Dretke*, 396 F.3d 607, 613-14 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 80 (2005).

firearm at Salvador Ruelas and Mark Lopez, intending or knowing that serious bodily injury or death would occur to Salvador Ruelas and Mark Lopez, but instead, missed Salvador Ruelas and Mark Lopez and hit Daniel Garza, causing the death of Daniel Garza with the use of a deadly weapon, namely, a firearm, then you will find the defendant guilty of capital murder or murder.

*Ex parte Lofland*, Application No. WR-60,283-01 at 233 (emphasis added).  In connection with its consideration of Lofland's state application for habeas corpus, the Texas Court of Criminal Appeals essentially determined, when it adopted the findings of the state trial court, that any error in the transferred intent instruction was harmless:

16.    The Court finds, based on a review of the entire jury charge, that the jury was correctly instructed that it had to find beyond a reasonable doubt that [Lofland] caused the death of Daniel Garza while in the course of committing a robbery or attempted robbery in order to convict [Lofland] for capital murder.

17.    The Court finds, based on a review of the entire jury charge,  that  the jury was correctly instructed that it had to find beyond a reasonable doubt that [Lofland] specifically intended to cause the death of Daniel Garza.

18.    The Court finds, based on a review of the entire jury charge, that the jury was correctly instructed on all statutory elements for capital murder in accordance with Section 19.03(a)(2) of the Penal Code.

20.    The Court finds, based upon the trial court's personal recollection, a review of the trial court's entire charge, and the affidavits of R.P. Cornelius, that the jury would not have had a reasonable doubt about [Lofland's] guilt and the outcome of the capital murder trial would not have been different regardless of [Lofland's] counsel's purportedly deficient conduct of failing to properly object to the trial court's transferred intent instruction.

*Ex parte Lofland*, Application No. WR-60,823-01 at 150-151.  These findings are not based on an unreasonable determination of the facts in light of the evidence, nor are they contrary to or an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court.

11

The record shows that the judge whose proposed findings of fact and conclusions of law were adopted by the Texas Court of Criminal Appeals was the same judge who presided over Lofland's trial. In addition, the record shows that while Lofland's counsel believed, in retrospect, that he should have objected to the transferred intent instruction, he too concluded that such an objection would not have led to a different result for Lofland.[3] These two separate assessments, coupled with

---

[3] Trial counsel, Cornelius, initially stated in an affidavit he filed in the state habeas corpus proceedings that he thought the transferred intent instruction was harmful:

> I recently reviewed the jury charge at the request of Lofland's habeas counsel, Randy Schaffer. The charge improperly authorized conviction for capital murder on a theory of transferred intent that constituted only felony murder, as it did not require the jury to find that the death was caused during the course of a robbery (a necessary element of capital murder as alleged in the indictment). Furthermore, the charge improperly authorized conviction for capital murder if Lofland intended to cause serious bodily injury; the capital murder statute requires a specific intent to cause death. Finally, the charge improperly authorized conviction for capital murder if Lofland intentionally or "knowingly" fired the shots "knowing" that serious bodily injury or death would occur; the capital murder statute requires that such conduct be intentional. I did not notice these errors in the charge on transferred intent at the time of trial. My failure to object on these grounds was not strategic. In view of the fact that the defense contested that Lofland and his companions were committing a robbery and, in any event, that Lofland specifically intended to kill anyone, I believe that the erroneous charge on transferred intent was harmful.

*Ex parte Lofland*, Application No. WR-60,823-01 at 54-55. In a supplemental affidavit he filed in the state habeas proceeding, however, Cornelius stated that he did not believe the transferred intent instruction had any effect on the outcome of the case:

> I have re-read the record and re-thought the issues and change nothing that I said in my first affidavit. I will add however that I did object rather emphatically to any instruction on transferred intent and my arguments are well recorded in the record. I did not make a specific objection to the words "serious bodily injury or" and that was a mistake. I should have made this objection, but I missed it. Further, I did not object to the Judge's lack of explanation of how to apply this transferred intent instruction to capital murder versus murder. I should have objected to that as well but, again, just missed it.
>
> Now, with regard to the impact this may have had on the jury verdict or the appeal, I will of course answer the question and leave to others to determine if my opinion on this is relevant. With regard to whether or not this transferred intent instruction had any impact at all on this case factually or legally, honestly, I doubt it. The defense theory, since the very first day I was assigned this case, all through trial

12

the strong evidence presented against Lofland, including evidence that Lofland fired ten shots from

a semi-automatic assault rifle at the fleeing car which contained more than one person, and the jury

charge as a whole, compels a conclusion that the alleged error in the charge regarding transferred

intent did not have a substantial or injurious effect on the verdict, and was therefore harmless.

Although the transferred intent instruction did not contain an explanation of how transferred intent

applied to a charge of capital murder, as opposed to the lesser included offense of murder, the

elements required for a conviction for capital murder were clearly set forth elsewhere in the charge.[4]

---

> preparation, trial, argument, and appeal, was this: did the State have any evidence
> tending to connect Mr. Lofland to this crime other than the testimony of accomplice
> witnesses.  My belief then and now is that they did not.  Unfortunately, neither the
> jury nor the appellate courts agreed with me.

*Id.* at 140.

> [4] The jury was charged as follows:
>> A person commits the offense of murder if he:
>> (1) intentionally or knowingly causes the death of an individual; or
>> (2) intends to cause serious bodily injury and intentionally or knowingly
>> commits an act clearly dangerous to human life that causes the death of an
>> individual.
> A person commits the offense of capital murder if he intentionally commits murder,
> as hereinbefore defined in paragraph (1), and the person intentionally commits the
> murder in the course of committing or attempting to commit the offense of robbery.
> Robbery is a felony.
>> * * *
>> The definition of intentionally relative to the offense of capital murder is as
> follows:
>> A person acts intentionally, or with intent, with respect to a result of his
> conduct when it is his conscious objective or desire to cause the result.
>> * * *
>> Before you would be warranted in finding the defendant guilty of capital
> murder, you must find from the evidence beyond a reasonable doubt not only that on
> the occasion in question the defendant, was in the course of committing or attempting
> to commit the felony offense of robbery of Daniel Garza, as alleged in this charge,
> but also that the defendant specifically intended to cause the death of Daniel Garza,
> by shooting Daniel Garza, with a deadly weapon, namely, a firearm; or you must find
> from the evidence beyond a reasonable doubt that the defendant, Eric David Lofland,

Upon this record, it is pure speculation that the jury improperly determined Lofland's guilt based on the allegedly incorrect transferred intent instruction.

Because Lofland's jury instruction claim is procedurally barred from review in this § 2254 proceeding, and because the claim has no merit given the jury instructions as a whole and the determination that any error was harmless, Lofland is entitled to no relief in this proceeding on his erroneous jury instruction claim.

**B.     Ineffective Assistance of Counsel Claims (Claims Two and Three)**

In his next claim (claim two), Lofland maintains that his attorney, R. P. Cornelius, was ineffective at trial for failing to object to the jury charge on transferred intent as it applied to a charge of capital murder.  Lofland also contends (in claim three) that his counsel was ineffective on appeal for failing to raise issue with the transferred intent instruction.

Ineffective assistance of counsel claims are generally measured by reference to the clearly established federal law set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, to be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had.  *Id*. at 687.  Deficiency is judged by an objective

---

with the intent to promote or assist in the commission of the offense of robbery, if any, solicited, encouraged, directed, aided, or attempted to aid Tate Robinson in shooting Daniel Garza, if he did, with the intention of thereby killing Daniel Garza, and unless you so find, then you cannot convict the defendant of the offense of capital murder.

* * *

If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of either capital murder or murder, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of murder.

*Ex parte Lofland*, Application No. WR-60,823-01 at 224, 225, 226-227, 228-229.

reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of

15

the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984).  The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691.  Counsel will not be judged ineffective only by hindsight.  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003); *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 2462 (2005) ("hindsight is discounted").

Claims of ineffective assistance of appellate counsel are generally assessed under the same two part *Strickland* deficiency and prejudice standard as claims of ineffective assistance of trial counsel. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994).  With respect to *Strickland's* deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989).  Rather, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success." *Rose*, 141 F.Supp.2d at 704-705.  "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).  As for *Strickland's* prejudice prong, "[p]rejudice results if the attorney's deficient

16

performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001).

In rejecting Lofland's ineffective assistance of counsel claims, the Texas Court of Criminal Appeals did not determine whether counsel's failure to object to, and raise issue with on appeal, the transferred intent instruction constituted deficient performance. The Texas Court of Criminal Appeals did, however, conclude that Lofland was not prejudiced by the alleged deficiency of trial and appellate counsel. The Texas Court of Criminal Appeals made the following findings and conclusions:

16. The Court finds, based on a review of the entire charge, that the jury was correctly instructed that it had to find beyond a reasonable doubt that [Lofland] caused the death of Daniel Garza while in the course of committing a robbery or attempted robbery in order to convict [Lofland] for capital murder.

17. The Court finds, based on a review of the entire jury charge, that the jury was correctly instructed that it had to find beyond a reasonable doubt that [Lofland] specifically intended to cause the death of Daniel Garza.

18. The Court finds, based on a review of the entire jury charge, that the jury was correctly instructed on all statutory elements for capital murder in accordance with Section 19.03(a)(2) of the Penal Code.

19. The Court finds, based upon the trial court's personal recollection, a review of the trial court's entire charge, and the affidavits of R.P. Cornelius, that the jury would not have had a reasonable doubt about [Lofland's] guilt and the outcome of the capital murder trial would not have been different regardless of [Lofland's] counsel's purportedly deficient conduct of failing to object to the trial court's transferred intent instruction.

20. The Court finds, based upon the trial court's personal recollection and a review of the appellate record, that the effect of [Lofland's] counsel's purportedly deficient conduct of failing to specifically object to the trial court's transferred intent instruction because it allowed for a conviction of capital murder based upon facts which constitute murder was minimal in

17

context of the totality of trial counsel's representation in the capital murder trial of the primary case.

21.     The Court finds, based on the affidavits of R.P. Cornelius, that [Lofland's] counsel sufficiently reviewed the appellate record and presented the points of error that he believed had the best chance of success on direct appeal.

* * *

2.      The totality of the representation was sufficient to protect [Lofland's] right to effective assistance.

3.      [Lofland] fails to show that he was denied effective assistance of counsel in trial and on direct appeal.

*Ex Parte Lofland*, Application No. WR-60,823-01 at 150-152.

The Texas Court of Criminal Appeals' determination that Lofland was not prejudiced by counsel's failure to object to the transferred intent instruction, or raise that as an issue on appeal, is not based on an unreasonable determination of the facts and is not contrary to or an unreasonable application of *Strickland*.   In particular, having reviewed the trial transcript, the record of the state habeas proceedings, and the affidavits of Lofland's counsel, there is no reasonable probability that the result of Lofland's trial would have been different if counsel had objected to the transferred intent instruction.  As found by the state courts, the jury was correctly instructed on the proof required for a finding of guilty on the charge of capital murder.  The transferred intent instruction did not in any way specifically or inferentially modify the State's burden of proof on the capital murder charge. Accordingly, because the state courts' prejudice determination withstands review under § 2254(d), and because a finding on *Strickland's* deficiency prong is not needed where there is an absence of prejudice, no relief is available to Lofland on his ineffective assistance of trial and appellate counsel claims.

18

VI.   **Conclusion and Order**

Based on the foregoing, and the conclusion that no relief is available to Lofland on any of the claims he raises herein, it is

ORDERED that Respondent's Motion for Summary Judgment (Document No. 11) is GRANTED, Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and this § 2254 proceeding is DISMISSED WITH PREJUDICE.  In addition, it is further

ORDERED that a Certificate of Appealability is DENIED.  A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001).  When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

Given the claims raised herein as well, as the rejection of Petitioner's claims by the Texas Court of Criminal Appeals, the Court determines that reasonable jurists would not find the procedural rulings or the assessment of Petitioner's constitutional claims to be debatable or wrong.

19

Therefore, Petitioner has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability will not issue.

Signed at Houston, Texas, this 24th day of January, 2007.

Frances H. Stacy
United States Magistrate Judge